# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 2000 Session

## STATE OF TENNESSEE v. ROSALIND MARIE JOHNSON and DONNA YVETTE McCOY

**Appeal from the Criminal Court for Hamilton County**
**Nos. 218774, 218775, 219775 & 219776   Stephen M. Bevil, Judge**

---

**No. E1999-02468-CCA-R3-CD**
**September 11, 2000**

---

Defendant, Rosalind Marie Johnson, appeals her convictions for facilitation of first degree felony murder and aggravated burglary, for which she received concurrent sentences of 15 years and 3 years, respectively.  Defendant, Donna Yvette McCoy, appeals her convictions for first degree felony murder and aggravated burglary, for which she received concurrent sentences of life with the possibility of parole and 3 years, respectively.  Both defendants raise the issue of sufficiency of the evidence to support their convictions.  Defendant Johnson raises the following additional issues in her appeal: 1) whether the trial court erred in failing to sever the defendants' trials; 2) whether the trial court erred in failing to remove a juror for cause; and 3) whether the trial court erred in failing to suppress statements made by Johnson.  We conclude that the issues raised by both defendants in this appeal are without merit.  The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Cynthia A. LeCroy-Schemel, Chattanooga, Tennessee, for the appellant, Rosalind Marie Johnson.

Ardena J. Garth, District Public Defender; and Edward T. Landis, Assistant District Public Defender, Chattanooga, Tennessee, for the appellant, Donna Yvette McCoy.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; William H. Cox III, District Attorney General; Barry A. Steelman and Christopher D. Poole, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Defendant, Rosalind Marie Johnson, was convicted by a Hamilton County jury of facilitation of first degree felony murder and aggravated burglary, for which she received concurrent sentences of 15 years and 3 years, respectively. Defendant, Donna Yvette McCoy, was convicted by the same jury of first degree felony murder and aggravated burglary, for which she received concurrent sentences of life with the possibility of parole and 3 years, respectively. Both defendants challenge the sufficiency of the evidence. Defendant Johnson also contends: 1) the trial court erred in failing to sever the defendants' trials; 2) the trial court erred in failing to remove a juror for cause; and 3) the trial court erred in failing to suppress statements made by Johnson. Finding no reversible error, we affirm the judgments of the trial court.

**FACTS**

During the early morning hours of August 17, 1997, Theresa Lindsey was killed after the defendants, Rosalind Marie Johnson and Donna Yvette McCoy, forcibly entered her residence. It is undisputed that Lindsey died from two stab wounds inflicted by defendant McCoy.

Approximately two months prior to the murder of Lindsey, Lindsey and her female friend, Tuffie Carter, ended a lengthy romantic relationship. When that relationship ended, defendant McCoy and Carter became romantically involved. Carter testified that on several occasions defendant McCoy told her that she did not like Lindsey being around Carter and, if Lindsey did not stay away from Carter, "she would kill [Lindsey]."

On August 16th defendant McCoy believed Carter was at Lindsey's residence. Accompanied by defendant Johnson, defendant McCoy went to the residence. When the two defendants arrived, no one was at the residence. The two defendants left, but returned several hours later.

When both defendants returned to Lindsey's residence during the early morning hours of August 17th, no one answered the door. Defendant McCoy went to a window and looked inside. Seeing Lindsey and Carter running to the bedroom, defendant McCoy became enraged and broke a window with a metal water tee. Going back to the front door of the residence, both defendants tried to break in the front door. Finally, after defendant Johnson punched three holes in the door with the water tee, both defendants entered the residence through the broken door.

Once the two defendants broke in the front door, they ran to the back bedroom where Lindsey was on the phone calling 911 for help. Carter testified that while defendant Johnson stood guard at the bedroom door, holding the water tee and warning Carter not to hurt defendant McCoy, defendant McCoy went directly to Lindsey and stabbed her with a knife she had brought with her. After stabbing Lindsey, defendant McCoy held the knife to Carter's face, slightly cutting her, and

demanded Carter to give her McCoy's money.[1]  Carter further testified that when she grabbed a towel to try to stop Lindsey's bleeding, defendant McCoy took it from her and said "let the bloody bitch die."  After Carter gave defendant McCoy some money, both defendants fled; however, defendant Johnson pulled the phone cord out of the wall before leaving the room.

Lindsey was transported to the hospital but died from the stab wounds shortly thereafter. Both defendants were arrested early the same morning.

At trial defendant McCoy testified that she and Carter had an argument on August 15th, and Carter left the residence with all the money.  She testified that she later went to Lindsey's residence where she knocked on the front door; went to one of the windows; saw Carter and Lindsey; became enraged; smashed the window with the water tee; returned to the front door where she and defendant Johnson broke in the door; entered the residence; and demanded the money from Carter.  She testified that Lindsey pointed a gun at her, and she stabbed Lindsey with a knife.  She conceded being armed with this knife, which she described as similar to a butcher knife, when she entered the residence.

Both defendants were tried together by a Hamilton County jury.  Defendant Johnson was convicted of facilitation of first degree felony murder and aggravated burglary, and defendant McCoy was convicted of first degree felony murder and aggravated burglary.

## SUFFICIENCY OF EVIDENCE

A.     Standard of Review

In determining the sufficiency of the evidence, this Court does not re-weigh or reevaluate the evidence.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state.  State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994).  On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt.  State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).  Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979);  State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

---

[1]McCoy testified that she had given money to Carter to hold for their use.  In her testimony Carter referred to the money as "my [Carter's] money."

-3-

B.     Aggravated Burglary: Johnson and McCoy

The defendants contend that the evidence presented at trial was insufficient to support their convictions for aggravated burglary. We disagree.

A person commits aggravated burglary who, without the effective consent of the property owner, enters a habitation with the intent to commit a felony, theft or assault. Tenn. Code Ann. §§ 39-14-402(a)(1) and -403 (a). Further, a person commits assault who "[i]ntentionally, knowingly or recklessly causes bodily injury to another" or "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(1) and (2).

Viewing the evidence in a light most favorable to the state, as we must, the evidence is sufficient to sustain the convictions for aggravated burglary. Defendant McCoy had previously threatened to do bodily harm to the victim. Having seen Carter and the victim together in the victim's residence, the defendants broke in the front door. Defendant Johnson used a water tee to help break in the door, and both defendants entered the residence. Defendant Johnson had the water tee in her possession and warned Carter not to hurt defendant McCoy. Defendant McCoy was armed with a knife she brought with her and assaulted the victim. The jury could reasonably conclude that both defendants unlawfully entered the victim's residence with the intent to cause bodily injury to Lindsey and/or to cause her to reasonably fear imminent bodily injury. The evidence is sufficient to support the convictions for aggravated burglary.

C.     Facilitation of Felony Murder: Defendant Johnson

Defendant Johnson contends the evidence presented at trial was insufficient to support her conviction for facilitation of felony murder. We disagree.

"A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a).

Felony murder requires the "killing of another committed in the perpetration of or attempt to perpetrate any ... burglary ...." Tenn. Code Ann. § 39-13-202(2). In order for one to be guilty of facilitation of felony murder, it is not necessary to prove knowledge of the felony murder. State v. Lewis, 919 S.W.2d 62, 68 (Tenn. Crim. App. 1995). The state need only show that the defendant knew his or her co-defendant was planning to commit the underlying felony, and the person knowingly furnished substantial assistance in the commission of that felony. *Id.*

The evidence indicated that defendant Johnson agreed to go with defendant McCoy to the victim's residence, and realized how angry defendant McCoy was. As set forth previously, defendant Johnson substantially assisted defendant McCoy in gaining entrance into the victim's residence by helping to break in the door. Both defendants carried a weapon into the residence when

-4-

they initially entered, defendant Johnson's weapon being a water tee. The victim died after she was stabbed twice by defendant McCoy, as defendant Johnson, holding the water tee, warned Carter not to hurt defendant McCoy.

As a result of the testimony given at trial, the trier of fact could have reasonably concluded that defendant Johnson substantially assisted defendant McCoy in the commission of the aggravated burglary. Finally, the aggravated burglary led to the killing of another person. The trier of fact properly found defendant Johnson guilty of facilitation of felony murder.

D.    Felony Murder: Defendant McCoy

Defendant McCoy contends that the evidence presented at trial was insufficient to support her conviction for first degree felony murder because the state failed to prove the underlying felony. We disagree.

We have already concluded that a reasonable trier of fact could have found defendant McCoy guilty of aggravated burglary. The victim died as a result of two stab wounds she received during the burglary, the stab wounds being inflicted by defendant McCoy. In testimony given by defendant McCoy, defendant McCoy admitted stabbing the victim.

A reasonable trier of fact could have concluded that defendant McCoy committed an aggravated burglary, then stabbed and killed the victim. Thus, the evidence was sufficient to support the conviction for felony murder. *See generally* State v. Buggs, 995 S.W.2d 102, 107 (Tenn. 1999).

## DENIAL OF SEVERANCE OF DEFENDANTS

Defendant Johnson next contends that the trial court erred when it failed to grant a motion for severance of her trial from that of her co-defendant. We disagree.

A.    Standard of Review

Tenn. R. Crim. P. 14(c)(2)(i) and (ii) provide that the court shall grant a severance of defendants if deemed appropriate to promote a fair determination of the guilt or innocence of a defendant. The decision as to whether or not to grant a severance is left to the sound discretion of the trial judge, and this decision will not be disturbed unless the defendant is unfairly or unduly prejudiced. *See* State v. Coleman, 619 S.W.2d 112, 116 (Tenn. 1981); State v. Woods, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990). Stated in another manner, a trial court will not be found to have abused its discretion in denying a severance unless "'the defendant was clearly prejudiced to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty.'" State v. Burton, 751 S.W.2d 440, 447 (Tenn. Crim. App. 1988) (quoting Hunter v. State, 440 S.W.2d 1, 6 (1969)).

B.     Analysis

Defendant Johnson argues that her trial should have been severed because of the "spillover effect" of a joint trial.  The defendant contends that it was likely she was found guilty "by association."

The trial court found that the mere fact that proof might be stronger against one defendant, as opposed to the other, was not necessarily a basis for severance.  The trial court found that trying both defendants together would not be unduly prejudicial to defendant Johnson, nor would she be denied fundamental fairness or due process of law.

The mere fact that there may be more damaging proof against one defendant, as opposed to the other, does not require a severance.  State v. Meeks, 867 S.W.2d 361, 369 (Tenn. Crim. App. 1993).  Further, "the speculative risk of a spill-over effect" does not justify a conclusion that a joint trial was an abuse of discretion. *Id.*

No showing has been made that the defendant was unfairly or unduly prejudiced by the joint trial.  This court will not disturb the decision of the trial court in denying the defendant's motion to sever.

## DISMISSAL OF JUROR FOR CAUSE

Defendant Johnson contends that the trial court erred in failing to remove a juror for cause. We do not agree.

The defendant asserts that a juror should have been removed for cause because: 1) she was the wife of a police officer and was "familiar with things the average person would not have been familiar with," and 2) she was the victim of a recent crime.

During *voir dire* a juror stated that she had been married to a police officer for about a year. However, she then stated she would not be more partial to testimony given by police officers and believed she would be a fair and impartial juror.  "[T]he alleged relationship of jurors to people connected with law enforcement ... does not give rise to an inherently prejudicial situation in and of itself."  State v. Taylor, 669 S.W.2d 694, 699 (Tenn. Crim. App. 1983).  Further, nothing in the record substantiates the defendant's allegations that the juror was familiar with things that the average person was not.  The juror's marriage to a police officer did not require her excusal.

The defendant also argues that the juror had been the victim of a recent crime.  After an examination of the *voir dire* record before us, this court is unable to find any such indication.  Thus, we need not address this argument.

## MIRANDA - CUSTODIAL INTERROGATION

Defendant Johnson contends that the trial court erred in failing to suppress statements she made to detectives due to the absence of <u>Miranda</u> warnings. We disagree.

### A.      Standard of Review

In <u>Miranda v. Arizona</u>, the United States Supreme Court held that the prosecution cannot admit a statement by the defendant stemming from "custodial interrogation" unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed.2d 694 (1966). The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* Thus, because <u>Miranda</u> is only implicated when the defendant is questioned while in the coercive environment associated with being in police custody, our initial inquiry is whether defendant was subjected to "custodial interrogation."

Our Supreme Court developed the test in Tennessee for determining whether an individual is "in custody" as contemplated by <u>Miranda</u>. <u>State v. Anderson</u>, 937 S.W.2d 851 (Tenn. 1996). We must determine whether, "under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with formal arrest." *Id.* at 855.

### B.      Analysis

The defendant makes no reference to trial testimony by a detective wherein he testified to incriminating statements made by the defendant. The failure to make appropriate references to the record ordinarily waives the issue. Tenn. R. App. P. 27(a)(7) and (g); <u>State v. Schaller</u>, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997). Nevertheless, we have examined the testimony. Our review indicates that the only trial testimony relating to what the defendant told the detectives was that "she had been at a barbeque" on the night of the murder. The detective testified at the suppression hearing that this statement was volunteered by the defendant after he told her the victim had died. He further stated that he was not interrogating her at that time, and the statement was made when he first saw the defendant at her residence.

The trial court found that there was no custodial interrogation, and <u>Miranda</u> warnings were not required. *See* <u>Anderson</u>, 937 S.W.2d at 853-54. We agree. Regardless, it was undisputed that defendant Johnson was at the crime scene. The fact that she told the detective she was at a "barbeque" did not affect the verdict. This issue is without merit.

## CONCLUSION

We conclude that the evidence was sufficient to support the convictions of both defendants, and further conclude that the trial court did not err: 1) in failing to grant defendant Johnson's motion to sever; 2) in failing to remove a juror for cause as defendant Johnson contends; and 3) in denying defendant Johnson's motion to suppress the statements she made to detectives. The judgments of the trial court are affirmed.

_____
JOE G. RILEY, JUDGE